**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| EDGAR ARMANDO CHAVEZ CALIX, | ) | |
| *Petitioner*, | ) | |
| v. | ) | Case No. 1:26-cv-1155 (PTG/IDD) |
| MARKWAYNE MULLIN, *et al.*, | ) | |
| *Respondents*. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Petitioner Edgar Armando Chavez Calix's Petition for a Writ of Habeas Corpus (the "Petition"). Dkt. 1. Petitioner is a national and citizen of Honduras, who was lawfully paroled into the United States under 8 US.C. § 1182(d)(5) on June 11, 2024. *Id.* ¶¶ 27, 67. According to the Petition, on or about February 27, 2026, agents from Immigration and Customs Enforcement ("ICE") surrounded a vehicle Petitioner was traveling in and seized him without explanation. *Id.* ¶ 33-34. Petitioner has since been detained at the Farmville Detention Center in Virginia, which is within this Court's jurisdiction. *Id.* ¶ 25. Petitioner now brings suit against Jeffrey Crawford, Warden of the Farmville Detention Center, and others, alleging that his continued detention violates his constitutional rights. *Id.* ¶¶ 21-26. Respondents contend that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2). Dkt. 7 at 6. Upon consideration of the Petition (Dkt. 1), Respondents' Opposition (Dkt. 7), and Petitioner's Reply (Dkt. 9), the Court concludes that ICE did not properly revoke Petitioner's parole and there is no other lawful basis for detaining the Petitioner. Therefore, the Petition is **GRANTED**.

## BACKGROUND

### A. Legal Framework

Persons detained upon arrival into the United States fall into two categories: noncitizens who are covered under 8 U.S.C. § 1225(b)(1) and those covered under 8 U.S.C. § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) includes those "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" and certain others designated by the Attorney General. *Id.* Section 1225(b)(2) is a "catchall provision" that includes "most other applicants for admission." *Id.*

A person subject to § 1225(b)(1) is "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process," unless they express an "intention to apply for asylum" or a "fear of persecution." *Id.* At that point, the noncitizen must be interviewed by an asylum officer to determine whether they raise a "credible fear," or a "significant possibility" that they would be eligible for asylum. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 110 (2020). If the immigration officer reviewing the noncitizen's claim finds that they have expressed a "credible fear" of persecution, then the asylum claim is afforded "full consideration" in standard removal proceedings under 8 U.S.C. § 1229a. *Id.* (quoting 8 C.F.R. § 208.30(f)). If the asylum officer does not find the claim is based on "credible fear," their finding is subject to a supervisor's review. *Id.* If the negative fear finding is sustained, the supervisor's decision is appealable to an immigration judge for de novo review. *Id.* During this process, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Nevertheless, the government may release the noncitizen on parole "on a case by case basis for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8

U.S.C. § 1182(d)(5)(A)). Once removed from expedited removal proceedings, noncitizens are "afforded the same procedural rights as other aliens." *Thuraissigiam*, 591 U.S. at 111.

Determining whether to release a noncitizen on parole is within the "reasonable discretion" of officials within the Department of Homeland Security ("DHS"). 8 C.F.R. § 212.5(d). Federal regulations advise officials to consider "all relevant factors" when deciding whether to grant parole, including: "[t]he giving of an undertaking by the applicant, counsel, or a sponsor to ensure appearances or departure . . . [c]ommunity ties such as close relatives with known addresses; and . . . [a]greement to reasonable conditions (such as periodic reporting of whereabouts)." *Id.*

Parole may be revoked when DHS determines that "the purposes of such parole . . . have been served." 8 U.S.C. § 1182(d)(5)(A). The regulations implementing this statute define the two ways that DHS terminates parole: "automatic[ally]" or "on notice." 8 C.F.R. § 212.5(e). The "automatic" provision at § 212.5(e)(2) states that parole is automatically terminated if a parolee departs the United States or "at the expiration of the time for which parole was authorized," and in which case, "no written notice [of the revocation of parole] shall be required." *Id.* At all other times, parole must be terminated "upon written notice" that "the purpose for which parole was authorized" has been accomplished or that a designated official finds "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.* Under the empowering statute, parole "shall not be regarded as an admission of the alien," and revoking parole "return[s the noncitizen] to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

### B. Factual History

Petitioner is a national and citizen of Honduras, who was lawfully paroled into the United States under 8 US.C. § 1182(d)(5) on June 11, 2024. *Id.* ¶¶ 27, 67. At the time of his parole, DHS found Petitioner had expressed a credible fear of persecution if returned to Honduras, removed him from expedited removal proceedings, and placed him in regular proceedings under § 1229a. *Id.* ¶ 28. While released, Petitioner's former partner, with whom he was paroled, received two emails from DHS purporting to revoke their parole. The first email was sent on April 11, 2025. *Id.* ¶ 30. The second email was sent on April 24, 2026. *Id.* ¶ 39. Respondents contend that Petitioner's parole expired on April 24, 2026. Dkt. 7 at 5. Notably, Petitioner was detained by ICE on February 27, 2026—months before the second email was sent. Dkt. 1 ¶¶ 33-35, 37.

## DISCUSSION

The central question in this case is whether ICE can terminate a noncitizen's humanitarian parole without individualized findings or an opportunity to be heard. Under the INA, Congress permitted the Secretary of Homeland Security to grant non-citizens discretionary parole, but "only on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A). Congress also defined when discretionary parole may be revoked: "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served" or that a designated official finds "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.* Because an immigration official must make a "case-by-case" determination to grant humanitarian parole, assessing whether the conditions of permissible termination are present also requires "case-by-case" assessment. *Id.* In other words, § 1182(d)(5)(A) requires DHS to make individualized findings when revoking parole. *See Pineda-Berrios v. Lyons*, No. 1:25-cv-2332

(LMB), 2026 WL 384159, at *6 (E.D. Va. Feb. 11, 2026) ("8 C.F.R. § 212.5(e) requires DHS to engage in a 'case-by-case' determination before parole can lawfully be revoked."); *Seleznev v. Mullin*, No. 3:26-CV-130, 2026 WL 907692, at *6 (E.D. Va. Mar. 31, 2026) ("[R]evoking parole without a determination as to whether its purposes have been served is inappropriate.").

Here, ICE revoked Petitioner's parole without individualized findings or an opportunity to be heard. Respondents argue that Petitioner's parole was never "revoked" but instead that it "expired" on April 24, 2026. Dkt. 7 at 2, 5. However, Respondents have presented no evidence to suggest that the April 24, 2026, date was part of the original conditions of parole. Instead, it appears this date comes from the second of two emails purporting to unilaterally revoke Petitioner's parole. *See* Dkt. 1 ¶¶ 30, 39. Neither email provided any individualized findings as required by statute. *See Silieri Doe, et al., v. DHS, et al.*, No. 1:25-cv-12245, Dkt. 48 at 22 (D. Mass. Mar. 31 2026) (finding the April 11, 2025, mass email was invalid because it lacked any "record of a decision by an authorized official that the purposes of parole have been served").

For the same reasons Judge Brinkema expressed in *Pineda-Berrios v. Lyons, et al.*, 2026 WL 384159, No. 1:25-cv-2332-LMB-LRV (E.D. Va. Feb. 11, 2026), the Court finds that Petitioner was due adequate notice and an opportunity to be heard before his parole was revoked. Thus, ICE's current detention of the Petitioner violates his due process rights under the Fifth Amendment.

Accordingly, it is hereby

**ORDERED** that the Petition for Writ of Habeas Corpus (Dkt. 1) is **GRANTED**; it is further

**ORDERED** that Petitioner be immediately released from custody, with all his personal property, subject to the conditions of his preexisting parole, except for the provision purporting to

terminate parole on a date certain. Petitioner must live at a fixed address and provide that address to the Court within twenty-four (24) hours of the issuance of this Order; and it is further

**ORDERED** that Respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are **ENJOINED** from rearresting Petitioner unless he has committed a new violation of any federal, state, or local law; fails to comply with the conditions of parole, except for the one-year limitation; or his parole has been lawfully revoked in a manner consistent with 8 C.F.R. § 212.5(e).

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 14th day of September, 2026.
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge